**Byron STAFFORD, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 289, 2011.

Supreme Court of Delaware.

Submitted: Sept. 19, 2012.

Decided: Dec. 4, 2012.

Corrected: March 7, 2013.

---

Santino Ceccotti, Office of the Public Defender, Wilmington, Delaware for appellant.

Morgan T. Zurn and Paul R. Wallace (argued), Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the Court en Banc.

STEELE, Chief Justice:

A passenger in a car stopped by the police for illegally tinted windows claimed to have no identification and provided an officer with a false identity. After a database search returned no results, the officer handcuffed the passenger and recovered a gun during a pat down. We hold that the officer possessed probable cause to arrest the passenger for criminal impersonation. Therefore, we **AFFIRM** the trial judge's denial of a motion to suppress the gun.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 23, 2009, Wilmington police officers Isreal Santiago and Thomas Oliver properly stopped a car because it had tinted front windows.[1] Oliver questioned the car's driver, who produced a State of Delaware identification card and informed Oliver that his license was suspended. Because the driver could not legally operate the car, the officers sought to have the passenger, Defendant–Appellant Byron Stafford, drive the car away. Santiago testified that Wilmington police officers often allow a validly licensed passenger to drive a car away, as a courtesy, if the driver legally cannot.[2]

Before allowing Stafford to drive the car, Santiago asked Stafford whether he had any identification on his person. Stafford had no driver's license, state identification card, or any other document to confirm his identity, but he did not say that he owned no identification. Instead, Stafford told Santiago that his name was "Daren Miller," that he lived at 401 Robinson Street (located in Wilmington a few blocks from the location of the stop), and that he was born on November 13, 1979. Each statement was false.

The officers ran Stafford's purported information through the Delaware Criminal Justice Information System (DELJIS), a database containing information about all Delawareans with driver's licenses, state-issued identification, or any criminal history.[3] After no results appeared, Santiago tried different combinations and variations of the information to no avail. Santiago, who had made "fifty to a hundred" arrests for criminal impersonation during his five years in service, testified that he then thought that Stafford was lying about his identity.[4]

Santiago therefore returned to the car and advised Stafford that he was going to detain him pending identification. Santiago then asked Stafford whether he had any weapons or drugs, which Stafford denied. Santiago then handcuffed and searched Stafford before putting him into his cruiser. During the search, a firearm fell out of Stafford's pant leg. The officers arrested Stafford and returned to the police station, where they learned Stafford's true name, address, and birth date.[5] Using Stafford's actual identity, the officers conducted a DELJIS search which revealed several outstanding warrants.

A grand jury charged Stafford with possession of a deadly weapon by a person prohibited, carrying a concealed deadly weapon, receiving a stolen firearm, and criminal impersonation. The trial judge denied Stafford's motion to suppress the firearm, holding that Santiago could search

---

1. See 21 Del. C. § 4313; 2 Del. Admin. C. § 2277–3.0 (restricting the permissible areas and amount of window tint).

2. State v. Stafford, Cr. ID No. 0909006979, at 10 (Del.Super. Jan. 25, 2011) (TRANSCRIPT).

3. We take judicial notice of the DELJIS database and website. See Delaware Criminal Justice Information System, DELJIS Systems, http://deljis.delaware.gov/WhatWeDo.shtml (last visited Nov. 28, 2012) (stating that DELJIS maintains a data interface with driver's licenses, vehicle registrations, and other infor-

mation). Santiago testified that he did not check a national database (such as the Federal Bureau of Investigation's National Crime Information Center database) because Stafford provided a street address in Wilmington, Delaware, only a few blocks away from the location of the stop. Stafford, Cr. ID No. 0909006979, at 13.

4. Stafford, Cr. ID No. 0909006979, at 16, 36.

5. Stafford was actually born on November 15, 1979, and lived at 403 Robinson Street.

Stafford under 11 *Del. C.* § 1902,[6] and that the search did not violate either the United States or Delaware Constitutions. Stafford waived his right to a jury trial and the trial judge found him guilty of each offense except receiving a stolen firearm.[7] He now appeals the trial judge's refusal to suppress the firearm, contending that the State seized it during an unlawful search.

## II. STANDARD OF REVIEW

 We review a trial judge's denial of a motion to suppress for an abuse of discretion.[8] When examining the trial judge's legal conclusions, we conduct a *de novo* review.[9] We review factual findings to determine whether the judge abused her discretion "in determining whether there was sufficient evidence to support the findings and whether those findings were clearly erroneous."[10]

## III. DISCUSSION

### A. Santiago properly stopped the car and requested Stafford's identification.

 When a police officer stops a car, he seizes the car and its occupants under the Fourth Amendment to the United States Constitution.[11] A traffic stop initially must be justified by a reasonable suspicion of criminal activity and "the scope of the stop must be reasonably related to the stop's initial purpose."[12] During a traffic stop, the police may request that a car's passengers provide identification and get out of the car.[13] We have held that asking a passenger questions about his identity and running a background check are not beyond a routine traffic stop's scope.[14]

 In this case, Santiago and Oliver stopped the car because they observed tint on the car's front windows that they reasonably thought violated a Wilmington ordinance and Delaware law. Stafford concedes that the police properly stopped the vehicle.

 Stafford argues, however, that a passenger in a car possesses the right to be free from a police frisk unless the police have a reasonable, articulable suspicion that the passenger is armed and dangerous. Stafford correctly states an estab-

---

6. 11 *Del. C.* § 1902 ("(a) A peace officer may stop any person abroad ... who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination. (b) Any person so questioned who fails to give identification ... may be detained and further questioned and investigated. (c) The total period of detention ... shall not exceed 2 hours. The detention is not an arrest.... At the end of the detention the person so detained shall be released or be arrested and charged with a crime.").

7. The State entered a *nolle prosequi* on the receiving a stolen firearm charge before the trial.

8. *Lopez–Vazquez v. State*, 956 A.2d 1280, 1284 (Del.2008).

9. *Id.* at 1285.

10. *Id.*

11. *Tann v. State*, 21 A.3d 23, 26 (Del.2011) (citing *Caldwell v. State*, 780 A.2d 1037, 1045–46 (Del.2001)); *see also Brendlin v. California*, 551 U.S. 249, 257–58, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).

12. *Tann*, 21 A.3d at 26.

13. *Id.; see also United States v. Diaz–Castaneda*, 494 F.3d 1146, 1153 (9th Cir.2007) (holding that the Fourth Amendment was not implicated when an officer asked for passenger's identification to see if he could drive a vehicle because the driver had a suspended license).

14. *Loper v. State*, 8 A.3d 1169, 1173 (Del. 2010).

lished principle, but not the entirety of the law concerning vehicle passengers. Police need a reasonable, articulable suspicion to frisk a passenger in a car,[15] but for Fourth Amendment purposes, a passenger can become a suspect by acting, during a traffic stop, in a manner that gives the police probable cause to suspect that the passenger committed a crime.[16] Therefore, while Stafford correctly states the rule, but the rule does not apply if the police develop probable cause to arrest a passenger during the course of a stop.

For example, in *Holden v. State*, we suppressed a gun discovered during a frisk of a passenger because the officers had no reason to suspect that the passenger was armed.[17] Suspecting that a license plate was fictitious, officers pulled over a car and then frisked Holden, who was one of the passengers.[18] The officers had no reason to frisk Holden other than suspicions derived from the fictitious plate.[19] We applied the principle that "[t]he scope and duration of the detention must be reasonably related to the initial justification for the traffic stop."[20] "Based on the objective facts, we cannot extrapolate from the fact of a fictitious tag alone that (i) a car

theft occurred and that (ii) the occupants must be armed and dangerous."[21] We therefore reversed the trial judge's denial of Holden's motion to suppress.

Unlike the officer in *Holden*, Santiago did not search Stafford merely because he was a passenger in the car. Santiago initially sought Stafford's identity as a courtesy to determine if Stafford could drive the car away.[22] At the time Santiago frisked Stafford, however, he believed Stafford had committed criminal impersonation, a crime independent of the initial traffic stop.[23] Holden, in contrast, did nothing to give the police a reasonable, articulable suspicion to detain him and pat him down. Therefore, we next analyze whether Santiago's belief that Stafford committed criminal impersonation justified the frisk.

### B. Santiago had probable cause to believe that Stafford had committed criminal impersonation.

 Police officers may arrest individuals if the officer has probable cause to believe that the individual has committed a crime.[24] The objective facts available to

---

15. *See Holden v. State*, 23 A.3d 843, 847 (Del. 2011) (citing *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009)).

16. *Caldwell v. State*, 780 A.2d 1037, 1050 n. 33 (Del.2001).

17. *Holden*, 23 A.3d at 850–51.

18. *Id.* at 845–46.

19. *Id.* at 848.

20. *Id.* at 847 (citing *Caldwell*, 780 A.2d at 1046).

21. *Id.* at 849 (footnote omitted).

22. Stafford briefly argued that Santiago should have ceased any investigation of Stafford's identity once Stafford told him that he

did not have a driver's license with him. *See* 21 *Del. C.* § 2721(b) (requiring drivers to have a license in their immediate possession while driving). Because producing a valid license in court is a defense to any charge under the subsection, however, an officer would have discretion to allow a validly licensed person to drive a car away when the alternative would be to have the car towed. *Id.*

23. A person commits criminal impersonation when he "[i]mpersonates another person and does an act in an assumed character intending to obtain a benefit or to injure or defraud another person." 11 *Del. C.* § 907.

24. 11 *Del. C.* § 1904(a)(1) (allowing officers to make warrantless misdemeanor arrests "whenever the officer has reasonable ground to believe" that the arrestee has committed a misdemeanor "[i]n the officer's presence").

an officer, not his subjective thoughts, control whether he had the power to arrest Stafford and conduct a search incident to the arrest.[25]

We have previously held that "[t]he probable cause standard is incapable of precise definition . . . because it deals with probabilities and depends on the totality of the circumstances."[26] The substance of all probable cause definitions, however, is a "reasonable ground for belief of guilt," which must be particular to the person seized.[27] Probable cause exists where the facts and circumstances within the arresting officer's knowledge, of which he has trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed.[28] The standard for probable cause requires less evidence than would justify a conviction and does not require the officers to have facts within their knowledge that would establish that the arrestee's guilt is more likely than not.[29] Only a fair probability, not a *prima facie* showing, of criminal activity is the standard for probable cause.[30]

"To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."[31] Hypothetically innocent explanations for facts learned during an investigation do not preclude a finding of probable cause.[32]

In this case, Santiago asked for Stafford's identification after Santiago had pulled over the car, in which Stafford was a passenger, for having illegally tinted windows, and discovered that the car's driver had a suspended license. Stafford did not produce a driver's license, state identification card, or any other official or unofficial document evidencing his identity. When Santiago searched "Daren Miller" and the birth date and address Stafford provided, Santiago had nothing to indicate that the person before him was Daren Miller, or that a Daren Miller even existed.

Stafford agrees that DELJIS contains information on all Delaware residents who possess a driver's license, state-issued identification, or have any criminal histo-

We have interpreted "reasonable ground" to mean probable cause. *Tolson v. State*, 900 A.2d 639, 642–43 (Del.2006) (citing *Thompson v. State*, 539 A.2d 1052, 1055 (Del.1988)).

25. *See Maryland v. Pringle*, 540 U.S. 366, 372, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (noting that courts determine whether probable cause existed based on the facts as "viewed from the standpoint of an objectively reasonable police officer").

26. *Lopez v. State*, 861 A.2d 1245, 1248 (Del. 2004) (quoting *Pringle*, 540 U.S. at 371, 124 S.Ct. 795).

27. *Pringle*, 540 U.S. at 371, 124 S.Ct. 795 (2003) (citations omitted).

28. *Tolson*, 900 A.2d at 643 (quoting *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)).

29. *State v. Maxwell*, 624 A.2d 926, 928, 930 (Del.1993) (citations omitted); *see also United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (noting that probable cause requires a "fair probability," which is "more than a 'bare suspicion,' but less than a preponderance of evidence").

30. *Maxwell*, 624 A.2d at 928 (citing *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

31. *Pringle*, 540 U.S. at 371, 124 S.Ct. 795 (quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

32. *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011) (citing *Maxwell*, 624 A.2d at 930).

ry.[33] Using a 2006 national survey, he notes that not all Americans have current government-issued identification, and that certain subgroups may have a lower percentage than the norm, though in all cases the vast majority of individuals have some identification.[34] Even accepting Stafford's national data as accurate in Delaware, however, it nevertheless appears probable that a Delaware resident like Stafford would be in DELJIS—even before including all records of criminal history. Unless there is no overlap between the set of people with no identification and those with a criminal history, the probability a person will appear in DELJIS will be even higher once that person's criminal history is included.

Santiago checked not only Stafford's name, address, and birth date, but also different combinations and alternative spellings of the information Stafford provided. No combination produced results. The absence of DELJIS information was not the only factor before Santiago, however. Stafford, a Delaware resident in his thirties, produced no identification—no documents, credit cards, or even a scrap of paper bearing his purported name. He did not state that he possessed no identification, but only that he had no identification to present to this officer. These facts, viewed in the context of Santiago's fifty to one hundred previous arrests for criminal impersonation, gave Santiago sufficiently trustworthy information for a reasonable officer to believe that Stafford had committed criminal impersonation.[35]

 There may have been an innocent explanation for these circumstances, including why "Daren Miller" returned no results in the DELJIS system. A hypothetical, wholly innocent explanation, however, does not preclude a finding of probable cause.[36] Probable cause does not require proof beyond a reasonable doubt, only a reasonable ground for belief of guilt.

We acknowledge that the Alaska Court of Appeals reached the opposite conclusion in *Erickson v. State*.[37] *Erickson* is distinguishable, because the *Erickson* defendant did not provide an address, so it was unclear whether he was an Alaska resident.[38] In this case, however, Stafford provided an address—401 Robinson Street—a street in Wilmington, Delaware only a few blocks from where the stop occurred. Additionally, while the *Erickson* trooper did not appear to have checked any variations of the defendant's name,[39] Santiago did check variations and different combinations of Stafford's purported name, address, and birth date. Other aspects of the *Erickson* court's reasoning are Alaska-specific (*e.g.*, the lack of identification among residents of Alaska's remote regions[40]) and not ap-

---

33. Mot. Rearg. or Reh'g *En Banc* 3.

34. Brennan Center for Justice, *Citizens Without Proof: A Survey of Americans' Possession of Documentary Proof of Citizenship and Photo Identification* 2 (2006).

35. Because we hold that probable cause existed, we do not reach the State's alternative contentions that Santiago had a reasonable, articulable suspicion that Stafford was armed and dangerous or that Stafford could be transported under the circumstances as part of a 11 *Del. C.* § 1902 detention and be searched incident to being transported in Santiago's police cruiser.

36. *Lefebvre*, 19 A.3d at 293.

37. 141 P.3d 356 (Alaska Ct.App.2006).

38. *Id.* at 357.

39. *See id.* at 357, 359 (noting that the defendant's information matched no record in the database, and speculating that the trooper could have mistakenly entered the name).

40. *Id.* at 359.

plicable to a small, densely populated state such as Delaware. While the *Erickson* court speculated about possible limitations of its database, we respectfully disagree that these possible limitations, in this specific context, render DELJIS so deficient that a person of reasonable caution could not believe an offense had been committed.

### C. Santiago discovered the firearm during a valid search incident to arrest.

Because Santiago had probable cause to believe that Stafford committed criminal impersonation, the final question is whether Santiago could validly search Stafford.[41] The Fourth Amendment generally requires officers to obtain a warrant before conducting a search.[42] There are several exceptions to this rule, however, one of which is a search incident to arrest.[43] Because Santiago possessed probable cause to arrest Stafford for criminal impersonation, he could conduct a search incidental to that arrest.[44] The content of the arresting officer's thoughts do not de-

termine his power to arrest Stafford or to conduct a search incident to arrest.[45] Consequently, it does not matter whether the officer could articulate a reasonable suspicion that Stafford was armed and dangerous or whether the officer thought he was carrying out an 11 *Del. C.* § 1902 detention.

In *United States v. Robinson*, the U.S. Supreme Court upheld a full-body search incident to an arrest where the defendant had been arrested for driving with a revoked license. The Court noted that the hazards to police of placing a suspect in custody justified a full-body search.[46] Even if the offense is nonthreatening, an officer may conduct a search incident to an arrest.[47] In this case, Santiago's discovery of a firearm was within the scope of his authority; Stafford's firearm fell from his pant leg while the officer was patting him down incident to his arrest.

Finally, Stafford claimed that his detention violated Article 1, Section 6 of the Delaware Constitution.[48] Although Staf-

---

**41.** Because we hold that Santiago had probable cause to arrest Stafford, we do not reach Stafford's contention that Santiago's use of handcuffs created a *de facto* arrest.

**42.** See *Williams v. State*, 962 A.2d 210, 216 (Del.2008) (noting that warrantless seizures are presumed to be unreasonable under the Fourth Amendment).

**43.** *Coley v. State*, 886 A.2d 1277, 2005 WL 2679329, at *1 (Del. Oct. 18, 2005) (ORDER).

**44.** See *United States v. Robinson*, 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

**45.** *Whren v. United States*, 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (collecting cases to demonstrate that an officer's motives do not invalidate behavior that is "objectively justifiable" under the Fourth Amendment); *see also Coley*, 2005 WL 2679329, at *2.

**46.** *Robinson*, 414 U.S. at 234–35, 94 S.Ct. 467.

**47.** *See id.* ("Nor are we inclined, ... to qualify the breadth of the general authority to search incident to a lawful custodial arrest on an assumption that persons arrested for the offense of driving while their licenses have been revoked are less likely to possess dangerous weapons than are those arrested for other crimes. It is scarcely open to doubt that the danger to an officer is far greater in the case of the extended exposure which follows the taking of a suspect into custody and transporting him to the police station than in the ... typical *Terry*-type stop. This is an adequate basis for treating all custodial arrests alike for purposes of search justification."); *see also Negron v. State*, 979 A.2d 1111, 2009 WL 2581714, at *4 (Del.2009) (ORDER) (applying *Robinson* ).

**48.** Del. Const. art. I, § 6 ("The people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or thing, shall issue without describing them as particularly as

ford correctly notes that the Delaware Constitution provides protection from unreasonable searches and seizures, he offers no further explanation or elaboration of this argument. We do not recognize Stafford's conclusory assertion that the Delaware Constitution was violated as a reasoned argument.[49] Stafford therefore waived any claim under the Delaware Constitution by failing to explain his contentions.[50]

### IV. CONCLUSION

At the time Santiago searched Stafford, probable cause existed to arrest him and, therefore, Santiago had the authority to conduct a search incident to an arrest. Because Santiago discovered the firearm during a lawful search, the trial judge properly denied the motion to suppress. The Superior Court's judgment is therefore **AFFIRMED.**

---

may be; nor then, unless there be probable cause supported by oath or affirmation.").

**49.** *Ortiz v. State,* 869 A.2d 285, 291 n. 4 (Del.2005)

**50.** We have previously described criteria for properly presenting a claim under the Delaware Constitution. *See Jones v. State,* 745 A.2d 856, 864–65 (Del.1999) (describing non-exclusive criteria to determine whether a Delaware constitutional provision has the same meaning as similar provision in the United States Constitution).