**IN THE COURT OF COMMON PLEAS OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | Cr. ID No. 1208015186 |
| | ) | |
| RANDALL T. HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: April 2, 2014
*Decided: July 9, 2014

Danielle Brennan, Esquire                     Louis B. Ferrara
Deputy Attorney General                       1716 Wawaset Street
820 N. French Street, 8TH Floor               Wilmington, DE 19806
Wilmington, DE 19801                          *Attorney for Defendant*
*Attorney for the State of Delaware*

## <u>MEMORANDUM OPINION AND ORDER ON
DEFENDANT'S MOTION TO SUPPRESS</u>

Defendant Randall T. Hernandez ("Hernandez") was arrested on August 18, 2012, and charged with driving under the influence of alcohol in violation of 21 *Del. C.* § 4177(a) (the "DUI Offense") and speeding in excess of posted limits in violation of 21 *Del C.* § 4169. On January 23, 2013, Hernandez filed the present Motion to Suppress.

A hearing on the motion was held on November 18, 2013. At the hearing, the Court heard testimony from Corporal Clay Echevarria ("Corporal Echevarria"). At the conclusion of the hearing, the Court reserved decision and ordered supplemental briefing on the issue of whether probable cause existed when Hernandez was taken into custody for the DUI Offense. This is the decision on Hernandez's Motion to Suppress.

---

\* This case was reassigned from a retired Judge.

**Facts**

On August 18, 2012, at around 12:40 a.m., Corporal Echevarria, an employee of the Delaware State Police for 17 years,[1] was on patrol on Lancaster Pike in the area of Hampton Way, when he observed a vehicle travelling in excess of the posted speed limit. Corporal Echevarria activated his emergency lights and the vehicle pulled over.

As Corporal Echevarria approached the vehicle, the driver, whom he identified as Hernandez, opened the door and began to exit. Corporal Echevarria instructed Hernandez to remain in the vehicle. After calling in the stop, Corporal Echevarria approached the vehicle, at which point Hernandez again opened the door. Corporal Echevarria again directed Hernandez to close the door. Corporal Echevarria identified himself and informed Hernandez that he was being stopped for speeding. Upon approach, Corporal Echevarria observed that Hernandez's eyes were bloodshot and watery, and he noted an odor of alcohol on Hernandez's breath. Corporal Echevarria also noticed that Hernandez's reactions were slow; Hernandez appeared to be in a daze, and his movements were "in slow motion."

Corporal Echevarria requested that Hernandez produce his driver's license, registration, and proof of insurance. Hernandez proceeded to look for his driver's license, however, Corporal Echevarria observed that Hernandez had already passed his license while looking through his cards, and advised him of the same. When questioned regarding where he was coming from, Hernandez responded that he had been out with the boys.[2]

---

[1] Corporal Echevarria testified that, prior to being employed by the Delaware State Police, he worked for the New Castle County Police for nearly five years.

[2] On direct examination, Corporal Echevarria testified that Hernandez responded that he was out with "his boys." On cross-examination, Corporal Echevarria conceded that his report indicated that Hernandez responded that he was out with "the boys." The Court finds this distinction to be immaterial, and does not discount the credibility of Corporal Echevarria's testimony.

Corporal Echevarria asked Hernandez to exit the vehicle; this request was repeated when Hernandez failed to respond. Hernandez eventually exited the vehicle, and Corporal Echevarria asked him to walk to an area a few feet away. Hernandez did not respond and instead stared blankly at Corporal Echevarria, prompting Corporal Echevarria to articulate the request three more times before Hernandez walked to the requested area. Corporal Echevarria observed slowness in Hernandez's movements, as well as flushed face and difficulty speaking.[3]

Corporal Echevarria asked Hernandez if he had any physical limitations, however, Hernandez did not respond to the inquiry. Corporal Echevarria administered three field sobriety tests: the Horizontal Gaze Nystagmus ("HGN") test, the Walk-and-Turn Test, and the One-Leg-Stand Test.

On the Walk-and-Turn Test, Hernandez could not maintain the starting position. When he performed the test he had poor balance; he failed to walk heel-to-toe as instructed; he stepped off line; he did not count as instructed; and, he swayed when turning. Corporal Echevarria testified that "all clues were indicated," which he believed to be a total of six clues; however, Corporal Echevarria could not confirm the exact number of clues exhibited. He described Hernandez's performance as "not a very good test." Corporal Echevarria conceded that he did not know what number of clues constitutes a failure and he did not know the correlating percentage of reliability.

On the One-Leg-Stand Test, Hernandez failed to follow instructions, raising his right foot when he was directed to raise his left foot. Hernandez dropped his foot to the ground numerous times and raised his arms. Corporal Echevarria could not determine the number of clues exhibited on the One-Leg-Stand Test; however, he described Hernandez's performance as "bad." Corporal

---

[3] On direct examination, Corporal Echevarria testified that Hernandez's speech was slurred. On cross-examination, he testified that he noted mumbled speech in his report. Corporal Echevarria stated that the difference between slurred speech and mumbling is semantics; regardless of classification, Hernandez had difficulty speaking.

Echevarria could not recall what number of clues constitutes a failure and he did not know the correlating percentage of reliability.

Finally, Corporal Echevarria conducted the Finger-to-Nose Test, which Corporal Echevarria conceded is not a scientific test. After Corporal Echevarria gave directions and demonstration he asked Hernandez to perform. Despite direction to the contrary, Hernandez kept his eyes open through the duration of the test and he did not move as instructed, even when Corporal Echevarria repeated directions.

After completion of the field tests, Corporal Echevarria determined he had probable cause to arrest Hernandez for DUI, and placed him in custody.

On cross-examination, Corporal Echevarria acknowledged that he noted only a "moderate" odor of alcohol in his report, whereas his testimony on direct examination was that he detected a "strong" odor of alcohol. Corporal Echevarria explained that the degree of alcohol odor is a matter of perspective and, while he was not referring to the report during direct examination, he did remember the "distinct" smell of alcohol on Hernandez's breath.

Corporal Echevarria also conceded that in his report he indicated that Hernandez's speech was "mumbled," while on direct examination he described Hernandez's speech as "slurred." When questioned, Corporal Echevarria stated that he believes the difference between mumbled and slurred is merely semantics, and that the point was difficulty in speaking.

## Parties Positions

It is Hernandez's position that his arrest was not supported by the requisite probable cause. Hernandez argues that: (1) the HGN should not be considered by the Court because it was not administered according to NHTSA standards; (2) the remaining field sobriety tests should not be considered because they were not administered in accordance to NHTSA standards and Corporal Echevarria did not know the percentage of reliability for either test, and; (3) little or no weight

4

should be given to Echevarria's testimony regarding speech and odor of alcohol. Hernandez maintains that, absent the HGN, field sobriety tests, odor of alcohol, and slurred speech, there was insufficient probable cause to arrest Hernandez for either the DUI Offense or speeding.

It is the State's position that under the totality of the circumstances, Corporal Echevarria had probable cause to arrest Hernandez for the DUI Offense. The State contends that probable cause existed even if the Court assigns little or no weight to Hernandez's performance on the field sobriety tests.

### Discussion

On a motion to suppress, the burden is on the State to prove, by a preponderance of the evidence, that the challenged search or seizure conformed to the rights guaranteed by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[4] An arrest for a DUI offense must be supported by probable cause.[5] "Probable cause to arrest for a DUI offense exists when an officer possesses 'information which would warrant a reasonable man in believing that [such] a crime ha[s] been committed.'"[6]

Assessment of probable cause is based on the "totality of the circumstances, as viewed by a reasonable police officer in the light of his or her training and experience."[7] "Probable cause exists where the facts and circumstances within the arresting officer's knowledge, of which he has trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed."[8] A finding of probable cause "requires less evidence

---

[4] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Oct. 14, 2010) (citation omitted).
[5] *Lefebvre v. State*, 19 A. 3d 287, 293 (Del. 2011).
[6] *Id*. (quoting *Clendaniel v. Voshell,* 562 A.2d 1167, 1170 (Del.1989)).
[7] *Miller v. State*, 4 A.3d 371, 373 (Del. 2010) (citing *State v. Maxwell*, 624 A.2d 926, 929-930 (Del. 1993)).
[8] *Stafford v. State*, 59 A.3d 1223, at 1229 (Del. 2012) (citing *Tolson v.* 900 A.2d 639, at 643 (Del. 2006)) (quoting *Draper v. United States,* 358 U.S. 307, 313 (1959)).

than would justify a conviction . . . [o]nly a fair probability . . . of criminal activity is the standard for probable cause."[9]

## A. The Field Sobriety Tests

### a. The HGN Results

Hernandez contends that the HGN results should not be considered by the Court because the proper foundation for its admissibility was not established. The State acquiesces that, because the testimony presented at the hearing did not establish that the NHTSA requirements were satisfied, the Court may disregard or give little weight to HGN results.

The HGN test is a reliable indicator of impairment and may be used in assessing probable cause, providing the proper foundation is laid.[10] To establish the proper foundation, the State must show that the officer was trained to administer the test and that he did administer the test in accordance with his training.[11] Here, Corporal Echevarria testified that he received specialized training and certification in administering the HGN test. However, the State concedes that the testimony does not establish that the test was administered in accordance with NHTSA standards. Specifically, Corporal Echevarria did not determine whether Hernandez was wearing hard or soft contact lenses at the time the test was administered, as set forth in the NHTSA guidelines. Accordingly, no weight is given to the HGN results.

### b. The Walk-and-Turn Test and the One-Leg Stand Test

Secondly, Hernandez argues that the remaining field sobriety tests (the Walk-and-Turn Test and the One-Leg Stand Test) should be excluded because they were not administered in accordance with NHTSA standards. Hernandez suggests that Corporal Echevarria did not administer the test in a standardized manner as required by the NHTSA guidelines. Hernandez maintains that Corporal

---

[9] *Id.* (citations omitted).

[10] *See Mooney v. Shahan*, 2001 WL 1079040, at *3-4 (Del. Super. Aug. 24, 2001).

[11] *State v. Ministero*, 2006 WL 3844201, at *5 (Del. Super. Dec. 21, 2006).

Echevarria's lack of knowledge concerning the percentage of reliability for either test and his lack of knowledge concerning the number of clues exhibited by Hernandez renders the field sobriety tests inadmissible.

Field sobriety tests will be considered reliable and admissible if conducted in accordance with NHTSA Standards.[12] Corporal Echevarria testified that he received training and is certified by the Delaware State Police in NHTSA field sobriety testing. There is nothing in the record to indicate that Corporal Echevarria's administration of the field sobriety tests deviated from his training or the NHTSA guidelines. Accordingly, the field sobriety tests may be properly considered, and the deficiencies in Corporal Echevarria's testimony regarding the percentage of reliability shall go towards the weight of the evidence, not its admissibility.[13]

### c. Odor of Alcohol & Speech Difficulties

Hernandez claims that Corporal Echevarria's testimony regarding the observed odor of alcohol and speech deficiencies were inconsistent and therefore should be given little or no weight by the Court.

The Court finds Corporal Echevarria's testimony regarding the odor of alcohol to be credible. The existence of an odor of alcohol in any degree is relevant to a determination of probable cause. Corporal Echevarria unequivocally stated that he recalled smelling an odor of alcohol on Hernandez's breath, and while the Court finds that the discrepancy in the degree of that odor to be relevant, however, it is not sufficient for the Court to disregard the testimony.

The Court also finds Corporal Echevarria's testimony regarding Hernandez's speech to be credible. Despite the incongruity between his categorization of the speech as "slurred" and "mumbled," Corporal Echevarria consistently described Hernandez's as having difficulty speaking.

---

[12] *See Id*. at * 4.

[13] *State v. Davis*, 2012 WL 3794286, at *4 (Del. Com. Pl. July 9, 2012) (citing *Ministero*, 2006 WL 3844201, at *5).

Corporal Echevarria's testimony clearly established that, whether mumbled or slurred, Hernandez's speech was not clear.

### B. Probable Cause Existed

Considering the totality of the facts, I find probable cause existed to arrest Hernandez for DUI. Corporal Echevarria testified that he stopped Hernandez for a traffic violation and before initiating contact, Hernandez failed to follow the officer's instruction by attempting to exit the vehicle. When asked for his driver's license, Hernandez skipped over it while searching through his cards; it was not until Corporal Echevarria rendered assistance that the license was produced. Corporal Echevarria made the following observations of Hernandez: unintelligible speech, odor of alcohol, watery bloodshot eyes, delayed responses, slow movement, and difficulty following direction. During the field tests which I consider, Hernandez appeared dazed, he failed to follow instructions, and his performance was poor. Corporal Echevarria's observations based on his training and experience led him to believe that Hernandez was under the influence of alcohol.

The Court finds that the State proved by a preponderance of the evidence that Corporal Echevarria had probable cause to arrest Hernandez for DUI. The testimony presented at the hearing is sufficient to establish that there was a fair probability that Hernandez was driving under the influence.

### Conclusion

For the foregoing reasons, the Court finds that the arrest of Hernandez was supported by probable cause. Accordingly, Hernandez's Motion to Suppress is **DENIED**. The matter shall be scheduled for trial before this Judicial Officer.

**IT IS SO ORDERED**.

_____
The Honorable Alex J. Smalls
Chief Judge

8