IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                   :
                                     :    ID No. 1605005294
                                     :    In and for Kent County
                                     :
        v.                           :
                                     :
NATHAN H. WARD                       :
                                     :
        Defendant.                   :
                                     :

Submitted: August 30, 2016
Decided: September 8, 2016

**ORDER**

On this 8th day of September, 2016, after consideration of the Defendant's Motion to Suppress and the State's opposition, it appears that:

1. Defendant Nathan Ward (hereinafter "Ward") moves to suppress evidence seized as a result of an allegedly unlawful search and seizure. Ward argues that Corporal Simms (hereinafter "Simms"), who conducted the search and seizure, lacked justification to extend the traffic stop beyond its original purpose. The State opposes Ward's Motion to Suppress, stating that Simms had reasonable articulable suspicion of further criminal activity that justified extending the traffic stop for further investigation. After a hearing on the matter, the Court finds that the State presented insufficient facts to support a reasonable suspicion of drug or illegal gun activity sufficient to justify the extended traffic stop in this case. Accordingly, Ward's

Motion to Suppress is **GRANTED**.

2. The facts cited herein are those presented at the August 30, 2016 hearing. On May 8, 2016, at roughly 3:45 in the afternoon, Simms stopped Ward in Cheswold while he was driving a red Toyota Camry traveling 41 miles per hour in a 25 miles per hour zone. This traffic stop was visually recorded on Simms' MVR. The State played the video at the hearing during the course of Simms' testimony. After stopping the red Toyota Camry, Simms contacted the driver, who Simms stated appeared nervous. The video corroborated Ward's agitation. Simms spoke with Ward and asked him where he was coming from and where he was going. Simms testified that Ward stated he was coming from Dover and going to see his mother to give her flowers. When Simms told Ward that he did not see any flowers, Ward pulled flowers from behind his seat and showed them to Simms. Simms further testified that after asking where Ward's mother lived, Ward answered that she lived in Dover. Ward was driving away from Dover at the time. Additionally, Simms testified that during this inquiry, he noticed three cell phones on the passenger seat of the vehicle. After this initial contact, Simms took Ward's information and ran it through the DelJIS system and found nothing illegal. There were no warrants for Ward and the vehicle was properly registered.

3. When Simms returned the documentation to Ward, he asked Ward to step out of the vehicle. At that time, Simms conducted a pat down search of Ward. During this

pat down, Simms found forty dollars on Ward's person. Simms testified that he felt there was illegal activity afoot because (1) Ward was traveling in the opposite direction of where he stated he was going, (2) there were three cell phones on his passenger seat, and (3) Ward was nervous upon initial contact, At that point, Simms requested backup. During the next approximately twenty minutes, Ward was told to remain standing outside his vehicle, on camera, until another officer arrived. When an officer from State Police Troop 3 arrived, Simms requested to search Ward's vehicle after a lengthy discussion not audible on the video.

4. Ward testified that he was going to see his mother and his sister, taking flowers for both of them. He explained that although his mother lived in Dover, his sister lived in Clayton and that his mother was there for Mother's Day dinner. He testified that he eventually gave his consent to search the vehicle because Simms told Ward he would simply get a search warrant absent consent. Ward stated he wanted to avoid the trouble, so he signed a consent form. Simms, however, testified that he did not have sufficient information to obtain a search warrant, and denied telling Ward that he would override his decision by obtaining a warrant if Ward refused consent. Upon a search of the vehicle, Simms located a container on the driver's side door that contained crack cocaine. Based upon the discovery of drugs, and the fact that Ward had forty dollars cash in his pocket, Simms charged Ward with drug dealing and illegal

3

possession of a controlled substance, as well as speeding.

5. In a Motion to Suppress, based on a search without a warrant, the State bears the burden of establishing that the challenged search or seizure complied with the rights guaranteed by the United States Constitution, the Delaware Constitution, and Delaware statutory law.[1] The State's evidentiary burden in a Motion to Suppress is to prove the challenged matter by a preponderance of the evidence.[2] At a suppression hearing, the trial judge sits as the trier of fact and determines witness credibility.[3]

6. The Fourth Amendment of the United States Constitution requires that a traffic stop and any subsequent police investigation be justified at its inception.[4] A traffic stop by the police is justified where there is a reasonable suspicion of criminal activity, and the stop must be reasonable in its scope.[5] A hunch is not sufficient. Delaware courts define reasonable suspicion as

> an officer's ability to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. A determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective

---

[1] *State v. Holmes*, 2015 WL 5168374, at *3 (Del. Super. Sept. 3, 2015).
[2] *State v. Darling*, 2007 WL 1784185, at *1 (Del. Super. June 8, 2007), as corrected (July 3, 2007).
[3] *Turner v. State*, 957 A.2d 565, 570-71 (Del. 2008).
[4] *Dunlap v. State*, 812 A.2d 899, at *2 (Del. 2002) (TABLE).
[5] *Stafford v. State*, 59 A.3d 1223, 1227 (Del. 2012).

4

interpretation of those facts.[6]

Additionally, "the duration and scope of the traffic stop must last only as long as reasonably necessary to effectuate the purpose of the stop, at which point the legitimate investigative purpose of the traffic stop is completed."[7]  Therefore, "any investigation of the vehicle or its occupants beyond that required to complete the purpose for the [initial] stop constitutes a separate seizure that must be supported by independent facts sufficient to justify the additional intrusion."[8]  Finally, a police officer may protect himself by patting down the subject of his investigation.[9]  However, to justify a pat down

> an officer must have reasonable, articulable suspicion that the person is presently armed and dangerous.[10] The officer must point to specific and articulable facts which, taken together with all rational inferences from those facts, reasonably warrant the intrusion. Generally, a pat down is justified based on the nature of the suspected crime, a sudden reach by the individual, a bulge, or a history with the specific individual.[11]

7. Here, Ward acknowledged the reasonable suspicion for the traffic stop, but argues there was insufficient evidence to extend the stop to further question Ward, pat him down,  or search the vehicle.  Ward asserts that the duration and scope of the stop

---

[6] *State v. Chandler*, 132 A.3d 133, 141 (Del. Super. 2015), as corrected (Apr. 14, 2015).

[7] *Id.* at 142 (Del. Super. 2015), as corrected (Apr. 14, 2015).

[8] *Caldwell v. State*, 780 A.2d 1037, 1047 (Del. 2001).

[9] *State v. Chandler*, 132 A.3d 133, 141 (Del. Super. 2015), as corrected (Apr. 14, 2015).

[10] *Id.*

[11] *Id.*

exceeded the time reasonably necessary to effectuate the purpose of the stop, a traffic violation for speeding. Additionally, Ward argues that the pat down was not justified and was an illegal search and seizure. Finally, Ward argues that the consent to search the vehicle was unduly influenced by Simms' threat to obtain a warrant for which the officer admits there was insufficient evidence to provide probable cause.

8. The State argues that there were sufficient facts to support reasonable articulable suspicion to extend the traffic stop for further investigation. The State asserts that Simms' observation of Ward's nervous behavior upon initial contact, the three cell phones on the passenger seat of the vehicle, and that Ward appeared to be traveling in the opposite direction of where he stated he was going provided reasonable suspicion of drug or illegal gun activity. The State contends that under a totality of the circumstances, with the speeding, there were enough articulable facts to support a reasonable suspicion to justify the twenty minute extended traffic stop and subsequent search.

9. Ward's argument framed the evidentiary threshold for extending the stop as one requiring probable cause of additional criminal activity. Based on the authority cited above, the justification for extension of the stop must be evaluated under a reasonable suspicion standard rather than probable cause. Nevertheless, here, the Court does not find reasonable articulable suspicion in this case to warrant an extended

6

investigation after the initial traffic stop for speeding. Namely, under the totality of the circumstances, there has not been a showing of sufficient articulable facts that would rise to a level of reasonable suspicion of drug or illegal weapons activity as the State claims. The testimony regarding nervous behavior is not dispositive of any criminal wrongdoing, and in fact is a typical reaction for many vehicle operators after being stopped by a police officer.

10. Additionally, there seemed to be a misunderstanding regarding Ward's destination. The Court finds that upon inquiry, Ward answered the questions that were asked of him. He stated that he was leaving Dover and he was going to see his mother to give her flowers for Mother's Day. When he was asked where his mother lived, Ward answered honestly and stated that she lives in Dover. Accordingly, the misunderstanding regarding direction of travel is understandable. Furthermore, Ward presented two bouquets of flowers to Simms, upon inquiry, corroborating that he was in fact on his way to give flowers to someone on Mother's Day.

11. Finally, the existence of three cell phones in the vehicle, although not common, is also not determinative of any wrong doing where no other objective facts support reasonable suspicion of further criminal activity. All of the facts analyzed together do not raise a reasonable suspicion that Ward was armed and dangerous or was engaged in drug activity at the time.

12.    Accordingly, the State did not meet its burden to present objective facts sufficient to justify the detention beyond that of a normal speeding stop in this case. The Court finds that under the circumstances of this case, the subsequent twenty minute detention measurably extended the time necessary to conduct the traffic stop without justification. It therefore follows that evidence secured after Simms patted down Ward is suppressed from use at trial. The Court need not, and does not, address the validity of the consent for the officers' search of the vehicle after this twenty minute extended detention.

NOW, THEREFORE, IT IS ORDERED that Defendant Nathan Ward's Motion to Suppress must be **GRANTED**.

<u>/s/Jeffrey J Clark</u>
Judge