# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
JEREMIE CAMPBELL,⠀⠀⠀⠀)⠀⠀⠀Cr. A. No. 1705012271
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

Submitted:  December 6, 2017
Decided: December 7, 2017

On Defendant Jeremie Campbell's Motion to Suppress. **DENIED**.

## OPINION

Katherine C. Butler, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

Elise K. Wolpert, Esquire, and Eugene J. Mauer, Jr., Wilmington, Delaware, Attorneys for Defendant.

**SCOTT, J.**

## Finding of Fact

On May 19, 2017, Corporal Davis ("Cpl. Davis") of the Middletown Police Department was driving his patrol vehicle southbound on New Street in Middletown, Delaware. Cpl. Davis was driving directly behind a black Jeep. Cpl. Davis noticed that the Jeep seemed to be traveling above the reasonable rate of speed for the area. Cpl. Davis testified that there is not a posted speed but the reasonable rate of speed for the area is 25 miles per hour. He testified that he was approximately 50 feet behind the vehicle, and about 27 to 30 feet behind the vehicle when he saw the vehicle turn onto Cole Boulevard. Cpl. Davis testified that he did not see the vehicle for ten seconds, and when he turned onto Cole Boulevard the vehicle was halfway down the block. Evidence presented at the hearing showed that Cole Boulevard is 0.3 miles long. Thus the vehicle had traveled approximately 0.15 miles. Cpl. Davis stated that based on his experience as an officer and as a driver, Cpl. Davis determined that the driver was going approximately 50 or 60 miles per hour. Based on this determination, Cpl. Davis stopped the vehicle.

## Discussion

The only issue Defendant contests is the stop of the vehicle. The Court previously indicated to the parties it will only rule on the merits of the case. On a

2

motion to suppress, "a court must engage in a two-prong inquiry."[1] First, the court must determine "whether the movant has standing to contest the search or seizure,"[2] and if so, then the court looks at "the validity of the police conduct."[3] If the court determines that the defendant lacks standing, "the inquiry ends, and the evidence will not be suppressed."[4] "To have standing to contest a search or seizure, the movant must have had a 'legitimate expectation of privacy in the invaded place'."[5] The Court asked the parties to file supplemental briefing on whether Defendant had standing to contest the stop because he was a passenger in the vehicle and there was no evidence that he owned or controlled the vehicle. The parties did not seem to press this issue, but the Court believes that the parties should be aware of, and take interest in the issue. It was the Court's thinking that the parties would address the inconsistencies between *Brendlin v. California*, a 2007 United States Supreme Court decision cited by both the Defense and the State, and *Chisholm v. State*, a 2010 Delaware Supreme Court decision. In *Brendlin*, the United States Supreme Court unanimously held that a passenger in a vehicle during a traffic stop is "seized" under the Fourth

---

[1] *Aiken v. State*, 2017 WL 4792211, at *2 (Del. Oct. 23, 2017)(citing *Hanna v. State*, 591 A.2d 158, 162 (Del. 1991)).
[2] *Id.*
[3] *Id.* "A defendant carries the burden of demonstrating standing to challenge the search and seizure." *State v. Hamilton*, 2017 WL 4570818, at *6 (Del. Super. Oct. 12, 2017)(citations omitted).
[4] *Aiken v. State*, 2017 WL 4792211, at *2.
[5] *Id.*

3

Amendment and therefore may challenge the validity of the traffic stop.[6] However, three years after the *Brendlin* decision, this State's Supreme Court held that a defendant did not have standing to challenge a vehicle stop because the defendant was a passenger and the defendant "did not own the vehicle."[7] Still, Delaware case law acknowledges the *Brendlin* proposition that passengers, like the driver, are seized during a traffic stop for the purposes of the Fourth Amendment.[8] This is where the confusion lies. On one hand the court acknowledges that the driver and the occupants of a vehicle are seized for the purposes of the Fourth Amendment, yet

---

[6] *Brendlin v. California*, 551 U.S. 249, (2007).

[7] *Chisholm v. State*, 2010 WL 424241, at *2 (Del. Feb. 4, 2010). It seems that post-*Chisholm* case law is consistent with the *Chisholm* determination. *See Aiken v. State*, 2017 WL 4792211, at *4 (Del. Oct. 23, 2017)(discussing standing and reasonable expectation of privacy as a passenger in a vehicle); *State v. Hall*, 2017 WL 1449915, (Del. Super. Apr. 21, 2017); *State v. Howard*, 2015 WL 7259584, (Del. Super. Nov. 16, 2015). *See also State v. Dempster*, 2016 WL 749994, at n.1 (Del. Super. Feb. 26, 2016)(noting that the "more recent *Chisolm* decision does not address the *Brendlin* case and the two apparently conflict").

[8] *See West v. State*, 143 A.3d 712, (Del. 2016)("When law enforcement directs a driver to stop her car, the State has 'seized' the car and its occupants, and the protections of the Fourth amendment apply."); *Cropper v. State*, 2015 WL 5453097, (Del. Sept. 16, 2015)("During a lawful stop, a police officer may order both the driver and passengers out of the vehicle pending completion of the traffic stop. At that point, 'all passengers are subject to some scrutiny'."); *Stafford v. State*, 2012 WL 6031276, (Del. Dec. 4, 2012)("When a police officer stops a car, he seizes the car and its occupants under the Fourth Amendment to the United States Constitution."); *Murray v. State*, 45 A.3d 670, 682-83 (Del. 2012)("A traffic stop results in a seizure of the passengers as well as the driver"); *Loper v. State*, 8 A.3d 1169, 1172-73 (Del. 2010)("The United States Supreme Court has observed that during a routine traffic stop, all passengers are subject to some scrutiny").

some case law suggests that a passenger cannot challenge the stop of a vehicle. Consequently, the latter seems to contradict the United States Supreme Court *Brendlin* decision. Neither the State nor the Defense acknowledged the *Chisholm* decision, which is nearly identical to the present scenario and similar to the facts before the Supreme Court in *Brendlin*.

Regardless whether Defendant has standing to challenge the stop, Cpl. Davis had reasonable articulable suspicion to stop the vehicle for speeding. The Fourth Amendment to the United States Constitution "guarantees 'the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures'."[9]

> When law enforcement directs a driver to stop her car, the State has "seized" the car and its occupants, and the protections of the Fourth Amendment apply. But it is only those searches and seizures that are "unreasonable" that run afoul of the Fourth Amendment. In the traffic stop context, under established law since *Terry v. Ohio*, a seizure is reasonable when a law enforcement officer conducts a brief investigatory traffic stop based on reasonable and articulable suspicion of criminal activity.[10]

The court looks at the "reasonableness of the officer's suspicion of criminal activity," and the facts are "judged against an objective standard."[11] However, under Delaware law "the court can also 'combin[e] objective facts with such an officer's

---

[9] *West v. State*, 143 A.3d 712, 715 (Del. 2016).
[10] *Id.* at 716
[11] *Id.*

subjective interpretation of those facts'."[12] To determine if there was reasonable articulable suspicion of criminal activity, the court looks at the totality of the circumstances and "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act."[13]

At the suppression hearing, Defense counsel argued that based on Cpl. Davis' testimony the vehicle must have been going 108 miles per hour. This calculation is contrary to the principles of physics. It is well settled that the mathematical equation to determine speed is distance divided by time (s=d/t). Cpl. Davis testified that it took approximately 10 seconds for the vehicle to travel halfway down Cole Boulevard which is 0.3 miles. Thus, the vehicle traveled approximately 0.15 miles in 10 seconds, or .00278 hours.[14] Plugging these numbers into the equation, s=d/t, the values are:

$$speed = (0.15 \text{ miles})/(.00278 \text{ hours}) = 53.957 \text{ miles per hour.}$$

This value is consistent with Cpl. Davis' testimony. He testified that based on his experience as an officer in Middletown, knowing the area well, and as a driver for

---

[12] *Id.*

[13] *West*, 143 A.3d at 717.

[14] Time in this equation is 10 seconds. To properly calculate the speed in terms of "miles per hour", the time in seconds must be converted into hours. To convert seconds into hours you must divide the time in seconds by 60 to convert the seconds to minutes. Then you must divide the time in minutes by 60 in order to convert the minutes into hours. Here time equals: (10 seconds)/60 = (0.1667 minutes)/60 = 0.00278 hours. Thus, 10 seconds is approximately 0.00278 hours.

many years, the vehicle was traveling above the reasonable speed for the area. Without the aid of a mathematical equation, Cpl. Davis testified that he believed from his experience that the vehicle was traveling approximately 50 miles per hour. This approximation is consistent with calculated speed based on the timing and distance of the vehicle in respect to Cpl. Davis' vehicle as he testified to at the hearing. Additionally, to address Defendant's original argument, there is no requirement under Delaware law that a police officer must use a radar gun or some other form of technology to determine a speeding violation.[15] Based on the totality of the circumstances Cpl. Davis had reasonable articulable suspicion that the vehicle was speeding. For the aforementioned reasons Defendant's Motion to Suppress is hereby **DENIED.**

        **IT IS SO ORDERED.**

_____
**The Honorable Calvin L. Scott, Jr.**

---

[15] *See Chisholm*, 2010 WL 424241, at *3 (Del. Feb. 4, 2010)(finding that the officer had reasonable articulable suspicion to stop a vehicle for speeding, and the officer did not use a radar gun).