Tyrone A. TOLSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 93,2005.

Supreme Court of Delaware.

Submitted: April 26, 2006.
Decided: May 18, 2006.

terization of events when he declined a pre- sentence investigation.

Bernard J. O'Donnell, Esquire, Assistant Public Defender, Wilmington, Delaware, for appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and PARSONS, Vice Chancellor.[1]

HOLLAND, Justice.

The defendant-appellant, Tyrone A. Tolson ("Tolson"), appeals from his judgments of conviction in the Superior Court for: Trafficking in Cocaine, Possession with Intent to Deliver Cocaine, Maintaining a Vehicle for that Purpose, Possession of Cocaine within 1000 feet of a School; Possession of Cocaine within 300 feet of a Church, and Possession of Drug Paraphernalia. Tolson argues that the Superior Court erred in three respects: first, by concluding that the police had probable cause to arrest him; second, by determining that his inculpatory post-arrest statement to the police was not the product of interrogation; and third, by admitting into evidence measurements of the distance be-

---

1. Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

tween Tolson's arrest location and the neighboring school/church building, based on the results of an electronic device, a Range Finder.

We have carefully considered each of Tolson's claims. The record does not support Tolson's contentions. Accordingly, the judgments of the Superior Court are affirmed.

### Facts

This case arises from an undercover police operation. A probationer, Trayoris Allen ("Allen"), told the police that in the past he had purchased cocaine from Tolson and that he could arrange to purchase more. Allen explained to the police that Tolson would have other people drive him around when he (Tolson) was selling cocaine and that Tolson would not show up at the scene of a sale in a car, but would park at another location and approach on foot.

Under police observation, Allen made a telephone call to Tolson from the Dover Police Department. Allen arranged to purchase nine ounces of cocaine from Tolson at the Holiday Inn Express on Route 13 in Dover. Across Route 13 from that hotel is the Kent Christian Academy, which is both a church and a school.

That evening, the police set up surveillance at the Holiday Inn Express. They observed a black Ford Escort and a red Buick Skylark enter the parking lot. Tolson was a passenger in the Escort, accompanied by a driver. Only a driver was seen in the Skylark. As the three men entered the hotel, Tolson was talking on his cell phone.

The two men accompanying Tolson knocked on the door of the second floor hotel room designated by Allen and the

police arrested them. Several minutes later the police observed Tolson leaving the hotel, still talking on the cell phone. He entered the Skylark's driver's seat. Tolson drove the Skylark to the parking lot of an adjacent business. Tolson returned to the Holiday Inn Express on foot.

Undercover officers, waiting on the second floor of the hotel, arrested Tolson as he left the elevator to approach the same pre-arranged room. The arresting officers searched Tolson and found one ounce of crack cocaine and $341 in cash. In executing a search warrant for the Skylark, police found eight more ounces of cocaine under the driver's seat.

While in a holding cell, awaiting processing after his arrest, Tolson created a commotion and asked repeatedly what the charges were against him. Corporal Anthony J. DiGirolomo answered Tolson that he would be charged based on the cocaine found both in his pocket and in the Skylark. Tolson then admitted that the cocaine found on him was his, but stated that the cocaine found in the Skylark did not belong to him, and that he was delivering it for someone else. Tolson had not been advised of his Miranda[2] rights before this exchange.

### Tolson's Arrest Probable Cause Established

■ Delaware law enforcement officers have statutory authority to make a warrantless arrest when a crime has been committed in their presence, or where they have "reasonable ground to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."[3] A "reasonable ground to believe" must be more than mere suspicion and this Court has construed it to

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Del Code Ann. tit. 11, § 1904(b)(1) (2005).

mean probable cause.[4] "Probable cause" is a practical, non-technical concept that must be measured by the totality of the circumstances.[5] "Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that' an offense has been or is being committed."[6]

The first question presented in this appeal is whether the officers' reliance on the informant's information was justified and sufficient to establish probable cause. Information provided by an informant may constitute probable cause for a warrantless arrest where the "totality of the circumstances," indicates that the information is reliable.[7] In measuring the totality of the circumstances when an informant's tip is involved, this Court considers the reliability of the informant, the details contained in the informant's tip, and the degree to which the tip is corroborated by independent police surveillance and information.[8] If the informant's tip can be corroborated, the tip may establish probable cause, even where nothing is known about the informant's credibility.[9]

In this case, the record reflects that, under the totality of the circumstances, there was probable cause for the arrest of Tolson based upon the information provided by Allen. Although Allen was a new informant and there was nothing known about his credibility, there was adequate corroborating evidence to establish probable cause. Specifically, Allen was able to predict details of Tolson's behavior that supported the conclusion that Allen was truthful. Tolson appeared at the Holiday Inn Express in accordance with Allen's telephone instructions. Allen accurately predicted that Tolson would arrive as a passenger in a car. Allen correctly stated that Tolson would park elsewhere and then walk to the designated meeting place.

Tolson conformed to all the instructions and predictions provided by Allen. This evidence sufficiently corroborates Allen's assertion that he could buy drugs from Tolson. Accordingly, probable cause existed for Tolson's arrest, which then provided probable cause for the subsequent issuance of a search warrant for the Skylark. Therefore, the Superior Court properly admitted into evidence the drugs and money seized during Tolson's arrest, as well as the evidence found during the execution of the warrant to search the Buick Skylark.

### No Interrogation Under Miranda

Miranda warnings are required when police interrogate a suspect in a custodial setting.[10] Interrogation under Miranda need not amount to actual questioning, but may be the functional equivalent of questioning.[11] The "functional

4. *Thompson v. State*, 539 A.2d 1052, 1055 (Del.1988).

5. *Id.*

6. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (quoting *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

7. *Tatman v. State*, 494 A.2d 1249, 1251 (Del. 1985) (citing *Illinois v. Gates*, 462 U.S. 213, 242–43, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

8. *Id.* at 1251–52.

9. *Id.* at 1251.

10. *DeJesus v. State*, 655 A.2d 1180, 1190 (Del. 1995).

11. *Upshur v. State*, 2004 WL 542164, at *1 (Del. Mar.15, 2004) (citing *Rhode Island v. Innis*, 446 U.S. 291, 302, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)).

equivalent" of questioning includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."[12] The later part of the definition is concerned with the perspective of the suspect, not the intent of the police.[13] Consequently, an officer cannot be held responsible for an unforeseeable statement by the suspect. An interrogation only encompasses actions or words by the officer that he or she *should have known* would elicit an incriminating response.[14]

▇▇▇ At the time of the inculpatory statement at issue, Tolson was in a jail cell awaiting processing. It was Tolson, and not the officers, who initiated the conversation when Tolson became disruptive and repeatedly asked what charges he faced. The officer answered Tolson's question in a direct manner that was not the functional equivalent of interrogation. Enumerating the charges against Tolson, without more, was consistent with the booking process and it was not foreseeable that the enumeration would elicit an incriminating response.[15] Tolson voluntarily admitted that the cocaine found in his pocket was his, but stated that the cocaine found in the car was not.

Tolson mistakenly relies on *Wainwright v. State*[16] to support his position that the officer's response to Tolson's question was the functional equivalent of interrogation because it referred to the State's evidence against him. In *Wainwright*, we reversed a Superior Court decision to admit into evidence a defendant's statement made after the police not only informed him of the charges against him (which was consistent with booking practices), but also described the State's evidence against the defendant, including the "highly incriminatory accusations" of a co-defendant.[17] In *Wainwright*, however, because the defendant was well informed of the charges he faced, revealing the State's testimonial evidence against him was gratuitous, and likely to elicit a reaction.

In contrast, Tolson repeatedly and disruptively demanded what the charges were against him. The police officer simply responded. It was not foreseeable that informing Tolson of the charges against him, consistent with booking practices, would elicit a response. Moreover, it is not problematic that the officer used plain language rather than phrase his response to Tolson as "possession of cocaine."

The record reflects that there was neither police interrogation nor its functional equivalent within the meaning of *Miranda*. Thus, no *Miranda* violation occurred. Therefore, the Superior Court properly admitted into evidence Tolson's post-arrest inculpatory statement because it was not a product of an interrogation by the police before advising Tolson of his *Miranda* rights.

12. *Id.* at fn. 5.

13. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (reflecting the fact that *"Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices.").

14. *Id.* at 301–02, 100 S.Ct. 1682.

15. *See Wainwright v. State*, 504 A.2d 1096, 1102 (Del.1986) (holding that under *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), words or actions by police that are normally attendant to arrest and custody, do not constitute interrogation for *Miranda* purposes).

16. *Wainwright v. State*, 504 A.2d 1096 (Del. 1986).

17. Id. at 1103.

### Range Finder/Harmless Error

 The final evidentiary issue in this case involves the testimony given by Detective David Boney that the distance between the location of Tolson's arrest and the Kent Christian Academy was 282 feet, as measured by his Osprey Industries Range Finder. Detective Boney testified at trial that he personally had purchased the Range Finder three weeks before Tolson's arrest for use in his police work in cases where measurement of distance was required. Detective Boney testified that he had checked the Range Finder's accuracy by comparing its measurements with known distances between landscaping in his backyard. Detective Boney also explained that the Range Finder's measurement generally was consistent with his knowledge of the area based on his police experience.

 When evaluating whether scientific evidence is admissible, this Court must determine (1) that the expert was qualified (D.R.E.702); (2) that the evidence offered is otherwise admissible, relevant and reliable (D.R.E. 401 & 402); (3) that the bases for the opinion are those "reasonably relied upon by experts in the field" (D.R.E.702); (4) that the specialized knowledge being offered will assist the trier-of-fact to understand the evidence or to determine a fact in issue (D.R.E.703); and (5) that such evidence would not create unfair prejudice, confuse the issues or mislead the jury (D.R.E.403).[18] Moreover, when the scientific evidence is obtained from the use of a scientific instrument, expert testimony is necessary to establish the reliability and accuracy of the instrument.[19]

The State presented no expert testimony about the accuracy and reliability of the measurements taken by Range Finder devices generally, their general acceptance in the scientific community, or the reliability of the particular Range Finder used by Detective Boney. Nor was any expert testimony provided that established the similarities between the lidar radar and the Range Finder technologies, or Detective Boney's professional training with either device. The only evidence of a performance test offered was the unscientific test conducted by Officer Boney in his backyard.

 The State mistakenly relies on cases establishing the admissibility of lidar radar results in speeding and traffic violations. The fact that a scientific instrument uses similar, widely accepted technology does not eliminate the need to establish its accuracy or reliability. For example, although the courts in Delaware have widely accepted the reliability and accuracy of devices using Light Amplification by Stimulated Emission of Radiation, or "laser" technology, when a previously unevaluated type of laser was offered as evidence, the Superior Court conducted a thorough, proper analysis of the scientific evidence and of its accuracy and reliability.[20] Detective Boney's testimony about the results of his Range Finder test should not have been admitted into evidence because it fails to meet the threshold requirements for admission of scientific evidence.

18. *Nelson v. State,* 628 A.2d 69, 74 (Del.1993) (rejecting the *Frye* test and adopting standards for determining the admissibility of expert testimony relying on the Delaware Rules of Evidence, as consistent with the United States Supreme Court holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)).

19. *Zimmerman v. State,* 693 A.2d 311, 314 (Del.1997).

20. *See State v. Jarwan,* 2000 WL 33113846, at *3 (Del.Super.Dec.8, 2000).

Nevertheless, the independent admissible testimony of Detective Boney was sufficient to establish that the distance in question was less than the statutory minimum necessary to prove that Tolson was in possession of a controlled substance within 300 feet of a church and 1,000 feet of a school.[21] Officer Boney testified he knew that highway lanes of travel are twelve feet apart and that the median is ten feet wide. Thus, with four Northbound lanes for traffic and three Southbound lanes for traffic, there was approximately ninety-four feet of roadway between the hotel and the Christian Academy. Using the dimensions of the road and other information acquired during his seventeen years of police work, Officer Boney testified that the distance between the hotel and the church and school was less than the statutory minimum 1,000 and 300 feet respectively.

Detective Boney's estimate of distance based on his experience was relevant and admissible in its own right. No other testimony contradicted that estimate. Officer Boney's independent testimony was sufficient to support a jury verdict regarding the distances at issue without the use of the Range Finder. Accordingly, we hold that the Superior Court's error in admitting the Range Finder evidence was harmless beyond a reasonable doubt.[22] Thus, Tolson's final claim of error is also without merit.

### Conclusion

The judgments of the Superior Court are affirmed.

---

21. Del. C. Ann. tit. 16, §§ 4767(a)(1) & 4768(a) (2003).

---

22. *Van Arsdall v. State,* 524 A.2d 3 (1987).