**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE      )
                                 )

      v.                      )        I.D. No.  1710001043
                                 )

VERNON MONTGOMERY,   )
                                 )

      Defendant.           )

### ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS POST MIRANDA STATEMENT

Upon consideration of Defendant's Motion to Suppress Post Miranda Statement by Defendant (D.I. 38) filed by Defendant Vernon Montgomery; The State's Response to the Motion to Suppress (the "Opposition"); the hearing held on the Motion and Response (the "Hearing") on August 10, 2018; and the entire record of this criminal proceeding:

1.      On October 2, 2017, Wilmington Police Department ("WPD") received a 911 call about a robbery at a WSFS Bank (the "Bank") located at 211 North Union Street, Wilmington, Delaware.  The 911 caller described the robbery suspect as a tall black male displaying a firearm and wearing a neon color construction vest and mask.  The Bank provided WPD with real time tracking information from a GPS location device inside a bag of the stolen money.  WPD dispatch relayed this information to responding officers.

2.      The tracker stopped in the 1000 Block of West 4th Street.  WPD stopped all vehicles on West 4th Street between N. Van Buren Street and N. Jackson Street.  WPD officers then got out of their cars and began checking the stopped vehicles looking for a possible suspect.

3.      WPD Corporal Johnny Whitehead noticed a Chrysler 200 sitting stationary with a black male in the driver's seat and avoiding eye contact with the officers.  Corporal Whitehead detained Mr. Montgomery.  Then Corporal Whitehead searched a backpack on the passenger

floor. The backpack contained US currency and a black handgun. An officer transported Mr. Montgomery to a WPD station and Mr. Montgomery was placed in an interview room.

4.      The Court had the opportunity to review the video of Mr. Montomery's time in the interview room. At first Mr. Montgomery was alone in the room. Detective Harvist Smallwood joined Mr. Montgomery. Before Detective Smallwood could say anything, Mr. Montgomery began speaking. Detective Smallwood told Mr. Montgomery to not say anything until Detective Smallwood was able to get Mr. Montgomery's personal information. Mr. Montgomery again interrupted Detective Smallwood and talked about the incident. Mr. Montgomery said that the officer "needs to hear this" and that "this was out of desperation." Detective Smallwood again stopped Mr. Montgomery from talking and told Mr. Montgomery to "hold on" so that Detective Smallwood could get Mr. Montgomery's information.

5.      During the interview, Mr. Montgomery stated that someone threatened his family because Mr. Montgomery owed that person—a drug supplier—money. Eventually, Detective Smallwood was able to read Mr. Montgomery his *Miranda* warning, but only after being interrupted several times by Mr. Montgomery. After being advised of his rights, Mr. Montgomery stated that he did not wish to speak with Detective Smallwood about the bank robbery.

6.      As Detective Smallwood exited the room, Mr. Montgomery asked to speak with Detective Smallwood "man-to-man." Detective Smallwood told Mr. Montgomery that Mr. Montgomery had just refused to speak with him. Mr. Montgomery stated that he did not want to talk about "that"—referring to the bank robbery. Detective Smallwood said that he would be back in a few minutes and left the interview room.

7. Nearly three minutes later, Detective Smallwood returned to the room. He acknowledged that Mr. Montgomery asked for a lawyer and said what they are going to talk about will have nothing to do with what happened at the bank. On the video, Mr. Montgomery then interrupts Detective Smallwood. Detective Smallwood stopped Mr. Montgomery from speaking and asked Mr. Montgomery to provide the contact information for his family members that were threatened by the drug supplier. Mr. Montgomery gives Detective Smallwood information about his family. Detective Smallwood states "so somebody obviously is" and Mr. Montgomery once again cuts off Detective Smallwood. Mr. Montgomery said that he bought drugs and got desperate when the supplier called asking for his money.

8. Officers applied for and obtained a warrant for the Chrysler. Officers found a black hooded sweatshirt, a camouflage backpack, a Hi-Vis safety vest, a Styrofoam cup containing blue rubber gloves, a ski mask, a blue backpack containing work gloves, a 9mm pistol, and $7,385 cash.

9. Mr. Montgomery filed several motion to suppress evidence including a motion to suppress the statements made during the interview. The Court held a hearing on several of the motions (the "Hearing") on August 10, 2018. At the Hearing, the Court ruled that Mr. Montgomery made the pre-*Miranda* statements voluntarily and that police did not illicit the statements. The Court reserved the issue whether the post-*Miranda* statements were made in violation of *Miranda*.

10. *Miranda* warnings are required only where (1) questioning of a suspect rises to the level of interrogation and (2) the interrogation occurs while the suspect is either in 'custody' or in a custodial setting."[1] Interrogation under *Miranda* need not amount to actual questioning,

---

[1] *McAllister v. State*, 807 A.2d 1119, 1125-26 (Del. 2002).

but may be the functional equivalent of questioning."[2] The functional equivalent of questioning includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"[3] "[A]n officer cannot be held responsible for an unforeseeable statement by the suspect. An interrogation only encompasses actions or words by the officer that he or she should have known would elicit an incriminating response."[4] "The police need not shield their ears from defendant's truly spontaneous utterances."[5]

11.     Here, the post-*Miranda* statements were not solicited in violation of *Miranda*. Before Detective Smallwood left the room, Mr. Montgomery told him that his family had been threatened by his supplier. Detective Smallwood then read Mr. Montgomery his *Miranda* rights. At that point, Mr. Montgomery attempted to talk with Detective Smallwood again "man-to-man."

12.     When Detective Smallwood returned to the room, he said that he did not want to talk about the bank robbery. In fact, Detective Smallwood tried to limit Mr. Montgomery's conversation solely to the contact information for his family members that were threatened by the supplier. Mr. Montgomery interrupted Detective Smallwood and again made incriminating statements. Detective Smallwood acted reasonably and did not try to illicit incriminating evidence. Detective Smallwood did what we would expect our officers to do. Detective Smallwood learned that people were threatened and attempted to get their contact information so that the police could warn the family members. Moreover, Detective Smallwood cautioned Mr.

---

[2] *Tolson v. State*, 900 A.2d 639, 643 (Del. 2006).
[3] *Id.*
[4] *Id.*
[5] *State v. Chao*, 1989 WL 89691, at *6 (Del. Super. 1989).

4

Montgomery not to talk about the bank robbery. These directed and targeted questions do not violate *Miranda*.

13. Although the Court has determined that the post-*Miranda* questions did not violate *Miranda*, the Court has not determined on the admissibility of the evidence under a Rule 403 analysis. The Court is concerned that statements regarding matters not connected to the bank robbery could be prejudicial in a way that substantially outweighs the probative value of the statement. The Court requests that the parties review the video statement prior to trial and work together to redact those statements that have little to no probative value.

**IT IS SO ORDERED**.

Dated: September 5, 2018
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: File&ServeXpress