IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                )
                                  )
v.                                )        I.D. No.:  1911006339
                                  )        In and For Kent County
PAUL LOVETT,                      )
                                  )
            Defendant.            )


Submitted: September 11, 2020
Decided:  October 2, 2020


## OPINION AND ORDER


*Upon Review of the Motion to Suppress Search of Dwelling*
**DENIED**

*Upon Review of the Motion to Suppress DNA*
**GRANTED**

*Upon Review of the Motion to Suppress Statements*
**GRANTED**


Gregory R. Babowal, Esquire, Department of Justice, Dover, Delaware, *for the State.*

Zachary A. George, Esquire, Hudson Jones Jaywork & Fisher LLC, Dover, Delaware, *for Defendant.*


Primos, J.

Having considered Defendant Lovett's ("Defendant") Motions to Suppress, the State's responses, evidence presented at the September 4, 2020, suppression hearing, and a supplemental submission by Defendant,[1] the Court finds as follows:

## I. Factual Background

On November 11, 2019, officers of the Delaware State Police went to the home where Defendant was renting a bedroom to execute five capiases (i.e., arrest warrants).[2] Upon approaching the home, the officers saw Defendant's vehicle in the driveway and looked to see if he was inside. In plain view, the officers saw small clear ziploc bags as well as clear plastic bags torn off in corners and near knots in the bags. The officers continued to the front door, and the landlord invited them inside, leading them to Defendant's bedroom. The landlord cracked open Defendant's door and advised him of the officers' presence. The officers entered Defendant's bedroom and took him into custody. While in the room the officers observed, in plain view, additional ziploc bags and bags torn off in corners and near knots.

One of the officers, Detective Digati, placed Defendant in a patrol vehicle, rolled down his window, and then asked him if he wished to make a statement. He responded, "no." Officer Digati continued to make conversation with Defendant and Defendant's landlord, and advised Defendant that several people stated that he had been living and paying rent for the bedroom where the officers saw contraband. Defendant responded that he had only been living there for three days and paying rent for that time.

---

[1] Following the September 4, 2020, suppression hearing, the Court allowed the parties to submit supplemental written arguments to address certain issues raised during the hearing. Defendant did so on September 11, 2020.

[2] *See State v. Carter*, 2019 WL 6903996, at *1 (Del. Super. Dec. 18, 2019) (referring to a capias as "a warrant for [the defendant's] arrest"); *see also In re DeRiemer*, 1993 WL 544025, at *2 (Del. Super. Dec. 3, 1993) (calling a capias an "arrest warrant").

Based on the evidence in plain view in Defendant's car and bedroom, in addition to information provided by a confidential informant that Defendant kept and sold crack cocaine in his car and residence, the officers obtained a search warrant for the residence and the vehicle. While conducting the search, the officers discovered ammunition, plastic bags, cell phones, and cocaine in Defendant's bedroom, in addition to a firearm under his mattress. Subsequently, the officers obtained a search warrant for Defendant's DNA.

## II. Legal Standard

Defendant argues that the officers made a warrantless entry into his bedroom. Defendant also challenges the validity of the subsequently issued search warrants. The burden is on the State to justify a warrantless search or seizure.[3] When a defendant challenges the validity of a search warrant, he or she bears the burden of establishing that the search or seizure was unlawful.[4] Whichever party holds the burden must persuade the Court by a preponderance of the evidence.[5]

Search warrants may not issue unless a factual basis for probable cause is shown within the "four corners" of the affidavit submitted to the magistrate in the officer's application for the search warrant.[6] There must be a logical nexus between the items sought and the place law enforcement intends to search.[7] When considering the affidavit, the magistrate is to make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay

---

[3] *State v. Holmes*, 2015 WL 5168374, at *3 (Del. Super. Sept. 3, 2015), *aff'd*, 149 A.3d 227 (Del. 2016).

[4] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. 2005), *aff'd*, 903 A.2d 288 (Del. 2006).

[5] *State v. Lambert*, 2015 WL 3897810, at *3 (Del. Super. June 22, 2015).

[6] Del. Const. art. I, § 6; 11 *Del. C.* §§ 2306, 2307 (contemplating the "four corners" test for probable cause); *Pierson v. State,* 338 A.2d 571, 573 (Del. 1975).

[7] *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980).

3

information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."[8] A reviewing court is to pay great deference to a judicial officer's determination of probable cause, and its scrutiny of the affidavit "should not take the form of a *de novo* review."[9] The reviewing court's duty is "simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."[10]

### III. Discussion

Defendant has submitted three motions to suppress. The Court will address each one in turn.

### A. Motion to Suppress Search of Dwelling[11]

In Defendant's Motion to Suppress Search of Dwelling, his primary contention is that the Delaware Constitution and the Delaware Code require the Court to suppress the contraband discovered in his bedroom because the officers did not have a search warrant to enter his room. Alternatively, he argues that the subsequently obtained search warrant was invalid. Defendant had an expectation of privacy in his bedroom, and therefore, has standing to challenge the search by law enforcement.[12]

The State argues that the officers had five capiases for Defendant's arrest, permitting them to enter his room and observe any incriminating evidence in plain view. The State contends that, even if the officers had not viewed the contraband in

---

[8] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[9] *Id.* at 236.

[10] *Id.* at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

[11] Defendant's motion argued, *inter alia*, for the suppression of evidence based on the officers' failure to knock and announce. Defendant withdrew that argument at the suppression hearing.

[12] *See Nave v. State*, 623 A.2d 1142 (TABLE), 1993 WL 65099, at *1 (Del. 1993) (defendant's standing based upon reasonable expectation of privacy in place to be searched); *accord Cooper v. State*, 80 A.3d 959 (TABLE), 2013 WL 5874813, at *2 (Del. 2013).

4

Defendant's bedroom while making his arrest, they nonetheless would have had probable cause to obtain a search warrant and search his room.

"'An individual's right to be free of unlawful searches and seizures in Delaware is secured by' the Fourth Amendment to the United States Constitution as well as Article I, Section 6 of the Delaware Constitution."[13] The Court agrees with the State that the officers did not violate Defendant's rights under Delaware law, as confirmed by the U.S. Supreme Court in *Payton v. New York*, 445 U.S. 573 (1980), and the Delaware Supreme Court in *Nave v. State*, 623 A.2d 1142 (TABLE), 1993 WL 65099 (Del. 1993).

In *Payton*, detectives gathered evidence sufficient to establish probable cause that the defendant had committed a crime.[14] Without a warrant, officers went to the defendant's apartment to arrest him.[15] Upon their arrival, with no response to their knock on the door, the officers broke in and entered.[16] In plain view, the officers saw a .30-caliber shell casing that they seized and later admitted into evidence.[17] The Supreme Court found that the officers had violated the defendant's Fourth Amendment rights under the U.S. Constitution by breaking into his home without a warrant.[18] The Court further observed that, had the police obtained an arrest warrant, the officers could have legally entered the defendant's residence to effectuate his arrest.[19] In so finding, the Court, albeit in *dictum*, stated that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the

---

[13] *McDougal v. State*, 128 A.3d 635 (TABLE), 2015 WL 7272051, at **2 (Del. 2015) (quoting *Jones v. State*, 745 A.2d 856, 860 (Del.1999)); *see also* 11 *Del. C.* § 2301.

[14] 445 U.S. at 577.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 577-78.

[18] *Id.* at 587, 602-03.

[19] *See id.* at 603.

limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."[20]

Delaware law is consistent with *Payton*.[21] In *Nave*, the Delaware Supreme Court found that an arrest warrant alone allows law enforcement to enter a residence to make an arrest.[22] In that case, police entered the defendant's mother's apartment to execute a search warrant.[23] The defendant challenged the warrant, and the Court stated that even if the search warrant was invalid, the police had the authority to enter the apartment because the police had several arrest warrants for defendant and reasonably believed that he resided therein.[24]

Defendant argues that the Court should recognize a difference between a case where the underlying crime is a felony, as was the case in *Payton*, and a misdemeanor. The Court will not make that distinction for two reasons: The Court in *Nave* did not make that distinction,[25] and the record here does not state whether the capiases for Defendant's arrest were for felonies or misdemeanors. Consistent with the courts' findings in *Payton* and *Nave*, the officers' possession of five capiases for Defendant's arrest gave them the right to enter his bedroom.[26] When

---

[20] *Id.* at 603.

[21] *Hardy v. State*, 698 A.2d 409 (TABLE), 1997 WL 408909, at *2 (Del. 1997); *see also Nave*, 1993 WL 65099, at *1-2.

[22] *See Nave*, 1993 WL 65099, at *1. Defendant rents a bedroom; this is analogous to renting an apartment within a complex where residents share common areas.

[23] *Id.*

[24] *Id.* The Court also determined that the defendant had an expectation of privacy in the apartment that the police entered to execute the arrest warrants. *Id.*

[25] *Id.*

[26] *See Payton*, 445 U.S. at 603; *see also Nave*, 1993 WL 65099, at *1. Defendant cites *Commonwealth v. Romero*, 183 A.3d 364 (Pa. 2018), for the proposition that law enforcement needs a search warrant in addition to an arrest warrant to enter a dwelling. However, in contrast to the present case, the police in *Romero* entered a *third party's* home; here, the police entered Defendant's own bedroom. *Id.* at 372. Defendant also relies upon *Warden v. Hayden*, 387 U.S. 294 (1967), and *Welsh v. Wisconsin*, 466 U.S. 740 (1984), to argue that police may not enter a home *without* a warrant unless an exception exists; however, these cases are inapplicable to the instant case because here, the police had warrants for Defendant's arrest. Finally, Defendant cites

6

the officers were in Defendant's room making a lawful arrest, they were permitted to observe any contraband in plain view.[27]

Based on the officers' legally permissible plain view observations of clear plastic bags torn off in corners and near knots in the bags in Defendant's bedroom and vehicle,[28] along with the information obtained from a confidential informant that Defendant lived and sold crack cocaine from where the police sought to search, the Court finds, based on this information provided within the four corners of the affidavit, that the officers had probable cause to obtain a search warrant for the residence.[29]

For the foregoing reasons, Defendant's Motion to Suppress Search of Dwelling is ***DENIED***.

### B. Motion to Suppress DNA

Defendant contends that the officers did not have probable cause to obtain the issued search warrant to retrieve his DNA because the officers did not have a

---

*United States v. Thompson*, 524 F.3d 1126 (10th Cir. 2008), to argue that the police could not enter Defendant's bedroom without his consent; however, that case is inapposite because the police in that case did not have a warrant. *Id.* at 1129.

[27] *McDougal*, 2015 WL 7272051, at **2.

[28] The affiant, who has a high level of training in drug investigations and has conducted numerous direct purchases of illegal substances, stated in the affidavit that this is a common way drugs are packaged and stored during distribution.

[29] *See supra* note 5; *see also United States v. Gilman*, 684 F.2d 616, 618 (9th Cir. 1982) ("Even if a warrant authorizes the search of an entire premises containing multiple units while reciting probable cause as to a portion of the premises only, it does not follow either that the warrant is void or that the entire search is unlawful."). The Court rejects the State's argument that, even if the officers had not seen contraband in Defendant's bedroom while executing the arrest warrants, they would have had probable cause to obtain a search warrant. "In determining whether probable cause has been demonstrated, there must be a *logical* nexus between the items sought and the place to be searched." *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000). An informant's statements must be "'reasonably corroborated by other matters within the officer's knowledge.'" *Gates*, 462 U.S. at 242 (quoting *Jones*, 362 U.S. at 269); *see also State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013). If the officers had not made the plain view observations in Defendant's bedroom, the logical nexus and corroboration requirement would not have been met merely with the plain view observations made in Defendant's vehicle along with the information obtained from the confidential informant.

7

comparable sample of DNA from the firearm at the time they applied for the DNA search warrant. The State argues that the substantial likelihood that Defendant's DNA would be recovered from the firearm due to its proximity to where Defendant slept was enough to establish probable cause to obtain a search warrant for his DNA. This Court must decide whether there was a sufficient nexus between Defendant's DNA and the gun found under his mattress to establish probable cause to permit the officers to obtain a search warrant. The Court finds that there was not.

This Court discussed the nexus requirement in *State v. Campbell*, 2015 WL 5968901 (Del. Super. Oct. 5, 2015), *State v. White*, 2017 WL 1842784 (Del. Super. May 8, 2017), and *State v. Bell*, 2019 WL 4507853 (Del. Super. Aug. 28, 2019). In *Campbell*, a detective received a warrant to obtain a sample of the defendant's DNA.[30] The police had not previously recovered a DNA sample from the evidence found at the crime scene but stated in the affidavit that they believed it was "possible" to recover such a sample from the seized evidence.[31] This Court in *Campbell* reviewed decisions from other jurisdictions that held, "absent law enforcement recovery of a comparison sample of DNA, a DNA swab search warrant is unsupported by probable cause."[32] The Court rejected this line of reasoning as going "too far," but held that "more is required [to establish a nexus between the defendant's DNA and the evidence at the crime scene] than the detective's unsupported belief that DNA may be recovered" - specifically, the affidavit "must be supported by [the affiant's] training, education, or experience" to "justify and

---

[30] *Campbell*, 2015 WL 5968901, at *4.

[31] *Id.* at *4-5.

[32] *Id.* at *4 (citing, *e.g.*, *Hindman v. United States*, 2015 WL 4390009, at *22 (N.D. Ala. July 15, 2015) ("[T]he government must possess a testable DNA sample sufficiently linked to the subject crime, which might then be compared to the suspect's sample.... The testable DNA is necessary because DNA, like a fingerprint, is a means of identification and not, in and of itself, evidence of a particular crime."); *United States v. Myers*, 2014 WL 3384697, at *7 (D. Minn. July 10, 2014) (stating that government must obtain DNA sample from crime scene evidence before applying for search warrant)).

explain" the affiant's conclusion that DNA could be recovered from the seized evidence.[33]

In *White*, the Court found that the affidavit, containing information regarding the affiant's experience finding DNA on objects worn by perpetrators during the commission of crimes, supported a finding of probable cause.[34] In that case, not only did the affidavit provide information regarding the affiant's experience in finding DNA, but it stated that the police had already matched the fingerprints on a dirt bike mask with those of the defendant.[35] The Court found that, because there was a "fair probability" that DNA would be recovered from the dirt bike mask based on the "totality of the circumstances," particularly given that "under common and ordinary understanding, [a dirt bike mask] is a tightfitting article of headgear that would be more likely to retain hair or other DNA," the warrant for the defendant's DNA established a sufficient nexus and was supported by probable cause.[36]

Most analogous to the case before the Court is *Bell*. In that decision, the Court found, as it does here, that a firearm with which the police sought to compare Defendant's DNA evidence "would not necessarily be considered likely, under common and ordinary understanding, to retain materials containing DNA evidence, as would, for example, a dirt bike mask or other tight-fitting clothing."[37]

In this case, the affidavit stated, "Affiant believes there is sufficient reason to believe that DNA belonging to [Defendant] will be present on the . . . firearm and/or ammunition in question as it is likely he would have had physical contact with it."[38]

---

[33] *Id.* at *5. In *Campbell*, the police never performed DNA testing on the evidence at the crime scene even though they obtained the defendant's DNA; therefore, given that there was no evidence to suppress, the court's analysis in that case was *dicta. Id.* at *6.

[34] 2017 WL 1842784, at *5.

[35] *Id.*

[36] *Id.*

[37] 2019 WL 4507853, at *4.

[38] *See id.* at *2.

Nowhere in the affidavit does it state that the affiant had training, education, or experience in the collection, analysis, or presence of DNA evidence either at crime scenes generally, **or** on the specific types of items seized from this crime scene, to support the assertion that Defendant's DNA would be found on the gun and/or ammunition.[39] Furthermore, as distinguished from *White* and consistent with this Court's holding in *Bell*, the specific types of items to which the police wished to compare Defendant's DNA evidence - firearms and/or ammunition - would not be considered likely to retain materials containing DNA evidence.[40]

Given the totality of the circumstances, including the failure to describe the likelihood of recovering DNA from the evidence seized versus merely speculating that there was "reason to believe" Defendant's DNA would be found on the gun and/or ammunition, this Court finds that the affidavit in question fails to establish a sufficient nexus between Defendant's DNA and evidence of a crime. Therefore, the warrant for Defendant's DNA was not supported by probable cause.

For the foregoing reasons, Defendant's Motion to Suppress DNA is **GRANTED,** and any incriminating DNA results will be suppressed at trial.

### C. Motion to Suppress Statements

Defendant moves this Court to suppress the statements he made after he was placed into custody, arguing that law enforcement interrogated him without issuing him his *Miranda*[41] warnings as required by the Fifth and Fourteenth Amendments of the U.S. Constitution and Article I § 7 of the Delaware Constitution. The State contends that, although Defendant was in custody, no interrogation occurred to trigger the requirement that Defendant be informed of his *Miranda* rights. To

---

[39] *See id.* at *3. "It was this deficiency, of course, that the court found to be crucial in the *Campbell dicta*." *Id.* at *3 n. 22.

[40] *Id.* at *4.

[41] *Miranda v. Arizona*, 384 U.S. 436 (1966).

determine whether there was a custodial interrogation, the Court applies a "totality of the circumstances test" under an "objective[ly] reasonable" person standard.[42]

Under the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, no person "shall be compelled in any criminal case to be a witness against himself."[43] The U.S. Supreme Court extended that right in *Miranda v. Arizona*, 384 U.S. 436 (1966), to in-custody interrogations of a suspect of a crime and established procedures to assure that custodial interrogations respect that right.[44]

The Delaware Supreme Court stated in *Marine v. State*, "it [*Miranda*] established that law enforcement officials may not constitutionally subject citizens to custodial interrogations without their having been first advised of certain rights protective of their Fifth Amendment privilege against self-incrimination."[45] The Court went on to say, "The obligation of police to duly warn a suspect of his Fifth Amendment rights before interrogation was created to address 'the problem of confessions obtained from suspects in police custody.'"[46] *Miranda* requires the police to warn the suspect that he has the right to remain silent, that anything he says can be used against him in court, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any custodial interrogation.[47] "Interrogation" includes questions or their "functional equivalent," including "'any words or actions on the part of the police (other than

---

[42] *Marine v. State*, 607 A.2d 1185, 1193 (Del. 1992).

[43] U.S. Const. amend. V.

[44] *Marine,* 607 A.2d at 1192.

[45] *Id.* (citing *Miranda v. Arizona*, 384 U.S. 436, 436 (1966)).

[46] *Id.* (quoting *Minnesota v. Murphy*, 465 U.S. 420, 429 (1984)).

[47] *Miranda*, 384 U.S. at 479.

those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'"[48]

The State, relying on *Tolson v. State*, 900 A.2d 639 (Del. 2006), argues that an interrogation did not occur while Defendant was in custody. This Court, however, finds the present case distinguishable from *Tolson*. In that case, the defendant created a commotion while in custody, asking repeatedly what the charges were against him.[49] An officer answered the defendant's question in a direct manner, stating the crime for which defendant would be charged.[50] The defendant then admitted to possessing cocaine and subsequently challenged the admission of that statement because he had not been read his *Miranda* rights.[51] The Court found that the defendant's rights were not violated because there was no custodial interrogation.[52]

Unlike in *Tolson*, where the officer enumerated the charges against the defendant consistent with the booking process, here the officer made conversation with Defendant regarding how long he had been renting his bedroom, a conversation one could not reasonably characterize as "'normally attendant to arrest and custody.'"[53] Importantly, in *Tolson*, it was the defendant, not the officer, who initiated the conversation; here, the officer initiated the conversation.[54] Furthermore, in this Case the conversation was initiated after the officer asked Defendant if he wished to make a statement and Defendant responded "no." The Court finds, particularly given that the officer rolled down Defendant's window as he sat in the

---

[48] *Tolson v. State*, 900 A.2d 639, 643-44 (Del. 2006) (quoting *Upshur v. State*, 2004 WL 542164, at *1 (Del. Mar. 15, 2004) (citing *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980))).

[49] *Id.* at 642.

[50] *Id.* at 644.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 643-44.

[54] *Id.* at 642.

patrol car in custody, that it was foreseeable that a conversation between the officer, Defendant, and Defendant's landlord would elicit an incriminating response from Defendant.

The facts of the present case are analogous to those in *Wainwright v. State*, 504 A.2d 1096 (Del. 1986). In that case, an officer advised the defendant of his charges as part of the formal booking process; however, the officer went on to tell the defendant that his codefendant had given the officers a statement describing how the defendant and the codefendant had proceeded to the store where the defendant committed the crime for which he was being charged.[55] The defendant, 45 minutes later, made an inculpatory statement in response to the officer's statement.[56] The Court found that, by going beyond the formalities of the booking process after having read the defendant his *Miranda* rights and after he had requested counsel, the statement by the officer "was reasonably calculated to elicit a reaction from the defendant," and therefore violated the Fifth Amendment.[57]

The Court likewise finds that making conversation with Defendant about what other people had said about Defendant's living situation, rather than simply following the formal booking process, deprived Defendant of his Fifth Amendment rights. Moreover, the conduct of law enforcement here was even more egregious than that in *Wainwright*, as here, the officer failed to inform Defendant of his *Miranda* rights before engaging in further conversation with him about potentially incriminating information.

For the foregoing reasons, Defendant's Motion to Suppress Statements is **GRANTED**. Specifically, any statements made by Defendant after he initially declined to make a statement to the police are suppressed.

---

[55] *Wainwright*, 504 A.2d at 1098.

[56] *Id.* at 1103.

[57] *Id.* at 1098, 1103-04.

## IV. Conclusion

As provided by this Opinion and Order, for the foregoing reasons, the Court finds that Defendant's Motion to Suppress Search of Dwelling is **_DENIED_**, Defendant's Motion to Suppress DNA is **_GRANTED_**, and Defendant's Motion to Suppress Statements is **_GRANTED_**.

**IT IS SO ORDERED.**

_____
Judge Noel Eason Primos


NEP/wjs
*Via Email*
oc:    Prothonotary
        Gregory R. Babowal, Esquire
        Zachary A. George, Esquire